UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Delta Beverage, Inc., *et al.*, Case No. 3:26-cv-1793

Plaintiffs,

v. MEMORANDUM OPINION AND ORDER

Jim Canepa, *et al.*,

Defendants.

## I. INTRODUCTION AND BACKGROUND

Plaintiffs Delta Beverages, Inc., Crescent Distributions NC, LLC, d/b/a Crescent Canna, Opta Nevada Group LLC, d/b/a/ Cheech and Chong's Beverages, Torch Drinks LLC, Fifty West Brewing Company LLC, Athens Beverage LLC, The Great Lakes Brewing Company, Green Room Brewing LLC, d/b/a Seventh Son Brewing, Floragеist, LLC, d/b/a Rhinegeist, SS Beverages 1, Inc., d/b/a Uncle Arnie's, Mile High Cure Corp., Sky Marketing Corp., d/b/a Hometown Hero, Wellness of Willoughby, LLC, d/b/a Thee Hemp Co., and Lifted Liquids, Inc., are companies that manufacture and sell intoxicating hemp-derived products. (Doc. No. 1). Plaintiffs either are located in states other than Ohio, manufacture their products with hemp sourced from states other than Ohio, or both.

I previously summarized the factual and procedural background of this case:

> The Cannabis sativa L. plant contains three intoxicating tetrahydrocannabinol compounds ("THC") – delta-8, delta-9, and delta-10. Delta-9 is the cannabinoid most associated with marijuana, while hemp-derived products most often contain

> delta-8. Ohio law previously defined hemp as that plant, or any of its parts, with a concentration of no more than 0.3% of delta-9 THC, a statutory definition consistent with that found in federal law. *See* 7 U.S.C. § 1639o(1).
>
> On December 9, 2025, the Ohio General Assembly passed a bill known as Senate Bill 56. Ohio Governor Mike DeWine signed the bill into law on December 19, 2025, and the legislation took effect on March 20, 2026. Among other things, Senate Bill 56 narrowed the definition of hemp to exclude any substance with a total concentration of [not] more than 0.3% of any intoxicating THC compound. Ohio Rev. Code § 928.01(C). Any substance with a THC concentration greater than 0.3% constitutes marijuana. Ohio Rev. Code § 3719.01(M). While the cultivation and sale of marijuana generally is prohibited by federal and state law, Ohio permits companies to do so if they have obtained a license. *See* Ohio Rev. Code § 3796.18. In order to obtain and maintain a license, a company may not "dispense marijuana from, obtain marijuana from, or transfer marijuana to, a location outside of the state of Ohio." Ohio Admin. Code § 3796:6-3-01(C).
>
> Plaintiffs filed suit against the State of Ohio, the Superintendent of the Ohio Division of Cannabis Control, the Executive Director of the Ohio Investigative Unit, the Superintendent of the Ohio State Highway Patrol, and 96 county and municipal prosecutor's offices, seeking to enjoin those Defendants from taking "any criminal, civil, or adverse administrative government actions" against Plaintiffs "for participating in this State and in an otherwise federally legal market involving hemp and hemp-derived products so long as their conduct comports with federal law and valid State laws predating Senate Bill 56." (Doc. No. 1 at 28). Plaintiffs allege Senate Bill 56 has created an impermissible burden on interstate commerce and deprived them of their right to participate in the interstate market for federally legal intoxicating hemp products in violation of the United States Constitution. (*Id.* at 27-28).

(Doc. No. 23 at 1-2).

I previously granted Plaintiffs' motion for a temporary restraining order, (*see id.*), and subsequently ordered that it be extended until September 4, 2026. (Doc. No. 43). Plaintiffs have filed a motion for entry of a preliminary injunction prohibiting Defendants from taking criminal, civil, or administrative enforcement actions against them pursuant to Senate Bill's redefinition of intoxicating hemp products and the attendant regulation of those products. (Doc. No. 34). The Akron, Ohio City Prosecutor filed a brief in opposition to the motion, (Doc. No. 45), as did the State of Ohio. (Doc. No. 46). Plaintiffs then filed a brief in reply. (Doc. No. 48).

For the reasons stated below, I grant Plaintiffs' motion for a preliminary injunction.

## II. DISCUSSION

### A. LACHES

The State of Ohio first argues Plaintiffs are not entitled to preliminary injunctive relief because they waited too long to seek that relief and that delay caused the State prejudice because state employees invested time and resources in "preparing for and implementing Senate Bill 56's various changes." (Doc. No. 46 at 6) (citing Declaration of Andrew Makoski, Division Counsel for the Ohio Division of Cannabis Control, Doc. No. 46-1).

As I previously stated, "[a] defendant asserting laches as an affirmative defense must show '(1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay.'" *Titan Logistics Grp. LLC v. Tischler*, No. 3:26-CV-1300, 2026 WL 2013939, at *2 (N.D. Ohio July 13, 2026) (quoting *Am. C.L. Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004)) (further citation omitted).

I do not doubt that Ohio Division of Cannabis Control employees, as well as other State of Ohio employees acting in concert with them, expended time, effort, and other resources in working to develop appropriate regulations and processes to implement and enforce the changes mandated by Senate Bill 56. But, as I concluded in *Titan Logistics*, the State of Ohio's assertion of prejudice "relies on a presumption that Senate Bill 56 is constitutional." *Titan Logistics*, 2026 WL 2013939, at *2. Because that presumption is not supported by the record as it currently stands, I conclude the State of Ohio fails to establish it was prejudiced by any delay in Plaintiffs' attempt to obtain injunctive relief.[1],[2]

---

[1] I note that several of the Plaintiffs sought leave to intervene in *Titan Logistics* shortly after I entered the June 15, 2026 temporary restraining order in that case. *See Titan Logistics*, Case No. 3:26-cv-1300, Doc. No. 40.

[2] Moreover, the State of Ohio does not identify what prejudice it allegedly suffered from the timing of Plaintiffs' filing of this case, as any uncertainty about which provisions of Senate Bill 56 might be enforceable arose no later than June 15, 2026, upon the issuance of the *Titan Logistics* temporary

Therefore, I conclude the doctrine of laches does not prohibit Plaintiffs from pursuing a preliminary injunction.

**B. PRELIMINARY INJUNCTIVE RELIEF**

**1. Overbreadth**

The State of Ohio argues that Plaintiffs are not entitled to a preliminary injunction because their requested injunction is too broad. (Doc. No. 46 at 6-8). The State first takes issue with Plaintiffs' assertion that "relief is justified because Ohio unlawfully permits only 'companies that source marihuana and manufacture marihuana products exclusively in Ohio' to obtain marijuana licenses." (*Id.* at 7) (quoting Doc. No. 34 at 5). According to the State of Ohio, this "isn't true" because Senate Bill 56 does not contain any provision that limits licensure to those companies. (Doc. No. 46 at 7).

But Senate Bill 56 did not need to contain any such language because Ohio law already provided the mechanisms for a company to obtain a marijuana license. By way of example, Ohio Revised Code § 3796.10 requires "[a]n entity that seeks to dispense at retail medical marijuana and adult-use marijuana shall file an application for licensure with" what is now known as the Division of Cannabis Control. Ohio. Rev. Code § 3796.10(A). And, in order to maintain that license, "[a] dispensary shall not dispense marijuana from, obtain marijuana from, or transfer marijuana to, a location outside of the state of Ohio." Ohio Admin. Code § 3796:6-3-01(C).

Senate Bill 56 amended the statutory definition of hemp to exclude any substance with a total concentration of not more than 0.3% of any intoxicating THC compound. *See* Ohio Rev. Code § 928.01(C). Marijuana retained its prior definition as "all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of

restraining order. *See Titan Logistics Grp. LLC v. Tischler*, No. 3:26-CV-1300, 2026 WL 1719313 (N.D. Ohio June 15, 2026).

a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin," with the relevant exception of "'hemp' as that term is defined in section 928.01 of the Revised Code." Ohio Rev. Code § 3719.01(M). *See also* Ohio Rev. Code § 3796.01(A)(1).

While the language of Senate Bill 56 may not expressly state that only companies who exclusively source, manufacture, and distribute intoxicating hemp products within Ohio may obtain a license to do so, Ohio law requires that """all statutes which relate to the same general subject matter must be read""" as though they constitute a single statute. *State v. Cook*, 942 N.E.2d 357, 364 (Ohio 2010) (quoting *United Tel. Co. of Ohio v. Limbach*, 643 N.E.2d 1129, 1131 (Ohio 1994) (further quoting *Johnson's Mkts., Inc. v. New Carlisle Dept. of Health*, 567 N.E.2d 1018, 1025 (1991))) (additional citation omitted by *United Telephone*). Construing these statutes together, Ohio law clearly restricts the commercial market for federally legal intoxicating hemp products to only those companies that source, manufacture, and distribute their products solely within Ohio.

The State of Ohio's argument that injunctive relief is improper because its licensing regulation, Ohio Administrative Code § 3796:6-3-01, is "outdated," "slated for termination," "slated for removal," "soon-to-be-terminated," and "stale" is not persuasive.[3] The State does not dispute, because it cannot, that this regulation is the current law in Ohio.

Nor could Plaintiffs' injuries "be remedied by an injunction limited to [this] regulation." (Doc. No. 46 at 8). Senate Bill 56 redefined the definition of state-legal hemp and hemp products to exclude hemp and hemp products with a total tetrahydrocannabinol concentration of more than

[3] I also am not persuaded by the State's argument that Plaintiffs cannot rely on § 3796:6-3-01 because they "omit[ed] it from their motion for preliminary injunction." (Doc. No. 46 at 8). Plaintiffs may not have explicitly cited that regulation, but the State of Ohio plainly understood Plaintiffs' assertion that "only companies that source marihuana and manufacture marihuana products exclusively in Ohio . . . can obtain a license to sell products in Ohio," (Doc. No. 34 at 5), to reference Ohio's licensing regulation. (*See* Doc. No. 46 at 7-8).

0.3%. Those substances and products are now included in Ohio's definition of marijuana, and Ohio law continues to criminalize the possession and sale of marijuana. *See* Ohio Rev. Code §§ 2925.03(A) and (C)(3)(a)-(h), 2925.11(A) and (C)(3)(a)-(g). Prohibiting the State of Ohio from enforcing its licensing regulation would have no impact on its penal laws that prohibit anyone from possessing, selling, and buying marijuana unless that person or entity has a license or has obtained the product from a licensed entity.

Finally, the State of Ohio argues Plaintiffs' requested injunction is too broad because it reaches statutory provisions that have not been found to be unconstitutional. As the State argues, Ohio statutes are presumptively severable. *See* Ohio Rev. Code § 1.50 ("If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.").

The Supreme Court of Ohio has instructed that "[p]rior to severing a portion of a statute, [a court] must first determine that the severability will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part." *State v. Hochhausler*, 668 N.E.2d 457, 464 (Ohio 1996) (citation omitted). This determination requires a court to ask:

> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*Id.* (quoting *Geiger v. Geiger*, 160 N.E. 28, 33 (Ohio 1927)) (further citation and quotation marks omitted).

The State of Ohio suggests that, even if the licensing requirement for out-of-state companies infringes on Plaintiffs' constitutional rights and must be severed, its "advertising, age-gating,

background-check, and product-safety requirements, all of which are 'unrelated' to the licensure of out-of-state companies" should remain enforceable. (Doc. No. 46 at 7). But the State does not explain how severance would work. Among the Ohio Legislature's purposes in enacting Senate Bill 56 was to require "products that fall outside the scope of the new narrowed hemp definition to be considered marijuana and sold exclusively in marijuana dispensaries." *See* https://www.legislature.ohio.gov/download?key=26814 (last visited Sept. 2, 2026). Rewriting Senate Bill 56 to remove intoxicating hemp products from the definition of marijuana – because there is no reason to think producers and sellers of federally-illegal marijuana would not remain subject to the licensing requirement – would leave intoxicating hemp products in no man's land. If those products were subsumed back into the statutory definition of hemp, they would not be subject to the requirements the Legislature intended. And if intoxicating hemp was to become a separate category between hemp and marijuana, it is not a permissible judicial function to determine which and how many of the provisions regulating marijuana that legislators would conclude must also apply to intoxicating hemp.

Thus, it is difficult to come to any conclusion but '"that the [legislature] would have refused to adopt the statute with the invalid part thereof stricken."' *Norton Outdoor Advert., Inc. v. Vill. of St. Bernard, Ohio*, 168 F.4th 897, 906 (6th Cir. 2026) (quoting *Emmons v. Keller*, 254 N.E.2d 687, 688 (Ohio 1970) (syllabus ¶ 3), *overruled on other grounds by Kinney v. Kaiser Aluminum & Chem. Corp.*, 322 N.E.2d 880 (Ohio 1975)). Put another way, if the Ohio Legislature's goal was to remove "hemp products . . . [from] a 'wild west' free from state oversight," (Doc. No. 46), why would it pass a bill that did not regulate those products?

I conclude the State of Ohio has failed to show that severance is appropriate or permissible, and I further conclude that the State has not demonstrated that Plaintiffs' requested relief is overbroad.

### 2. Preliminary Injunction Factors

Courts must consider four factors in determining whether a party is entitled to preliminary injunctive relief pursuant to Rule 65(b) of the Federal Rules of Civil Procedure: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*).

I conclude I may decide Plaintiffs' motion for a preliminary injunction without holding a hearing because there are no disputed factual issues. *Cf. Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552-53 (6th Cir. 2007); *Jones v. Jenkins Indep. Sch. Dist.*, No. 6:26-CV-00055-GFVT-HAI, 2026 WL 2058178, at *4 (E.D. Ky. July 16, 2026); *CNG Fin. Corp. v. Brichler*, No. 1:21-CV-460, 2021 WL 4189577, at *1 n.1 (S.D. Ohio Sept. 14, 2021).

The State of Ohio contends "Plaintiffs' dormant Commerce Clause claim is a red herring because Congress has actively regulated hemp." (Doc. No. 46 at 8). (*See also id.* at 9-10). I previously stated:

> the Supreme Court has held "that state laws offend the Commerce Clause when they seek to build up . . . domestic commerce through burdens upon the industry and business of other States, regardless of whether Congress has spoken." . . . The State offers no evidence that Congress expressly and approvingly contemplated that a state would enact legislation favoring in-state hemp companies over out-of-state companies.

*Titan Logistics*, 2026 WL 2013939, at *4 (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023)) (second alteration added). And, as I concluded above in rejecting the State of Ohio's first overbreadth argument, Ohio law clearly restricts the state-wide commercial market for federally legal intoxicating hemp products to only those companies that source, manufacture, and distribute their

products solely within Ohio. Therefore, Plaintiffs are likely to succeed on the merits of their dormant Commerce Clause claims.

The State of Ohio's reliance on the Fourth Circuit's decision in *Northern Virginia Hemp and Agriculture, LLC v. Virginia*, 125 F.4th 427 (4th Cir. 2025), does not change this analysis. True, as the State suggests, (Doc. No. 46 at 10), the Fourth Circuit observed that Congress "expressly permitted states to regulate the production of hemp in a manner more stringent than what is set forth in" federal law. *N. Virginia Hemp*, 125 F.4th at 495. But the Fourth Circuit made that observation in rejecting the plaintiffs' "claim that Congress regulated the definition of legal hemp so completely in the 2018 Farm Bill that, under [the doctrine of] field preemption, it left no room for states to regulate hemp." *Id.* The Fourth Circuit's field-preemption analysis did not stop it from proceeding to consider whether the Virginia law at issue violated the dormant Commerce Clause. *Id.* at 496-97.

Thus, I reject the State's argument that the dormant Commerce Clause has no relevance here.

The State of Ohio next argues that the changes to Ohio law effected by Senate Bill 56 apply equally to in-state and out-of-state companies and, therefore, do not purposefully discriminate against out-of-state companies to the benefit of in-state companies. (Doc. No. 46 at 10-13).

The State's reliance on *Northern Virginia Hemp* on this point again offers it no help. In that case, the Fourth Circuit held Virginia law did not discriminate against interstate commerce because "the plaintiffs [had] presented no evidence that [the challenged Virginia statute] seeks to or does advantage in-state entities by disadvantaging out-of-state entities." *N. Virginia Hemp*, 125 F.4th at 496. The record in this case and relevant Ohio law establishes that in-state commerce is advantaged by disadvantaging interstate commerce. *See, e.g., Nat'l Pork Producers*, 598 U.S. at 369 (holding "state laws offend the Commerce Clause when they seek to 'build up . . . domestic commerce' through

'burdens upon the industry and business of other States,' regardless of whether Congress has spoken") (quoting *Guy v. Baltimore*, 100 U.S. 434, 443 (1880)).

It is immaterial that some Plaintiffs whose principal place of business is in Ohio are disadvantaged to the same extent as those Plaintiffs whose principal place of business is another state. State laws that "deprive citizens of their right to have access to the markets of other States on equal terms" violate the dormant Commerce Clause. *Granholm v. Heald*, 544 U.S. 460, 473 (2005). So too do laws that require an out-of-state company to establish "a bricks-and-motor distribution operation" in another State in order to obtain access to that State's market for the company's products. *Id.* at 475. By redefining intoxicating hemp products as marijuana, Ohio disadvantages any company which does not entirely source, manufacture, and sell its products in Ohio by requiring those companies to incur additional expenses for the privilege of participating in Ohio's market for those products.

As I previously stated, "[t]he enforcement of this statutory and regulatory scheme impermissibly burdens out-of-state companies to the benefit of in-state commerce in violation of the dormant Commerce Clause. Therefore, I conclude Plaintiffs are likely to succeed on the merits of their claims for relief." *Delta Beverage, Inc. v. Canepa*, No. 3:26-CV-17893, 2026 WL 2275657, at *3 (N.D. Ohio Aug. 7, 2026).

Further, I conclude for the same reasons as I stated in my decision granting Plaintiffs' motion for a temporary restraining order that the remaining factors favor injunctive relief as well – Plaintiffs' strong likelihood of success "mandates" a finding of irreparable harm, *A.C.L.U. of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003); "no cognizable harm results from stopping unconstitutional conduct," *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021); and "it is always in the public interest to prevent violation of a party's constitutional rights." *Id.* (citation and quotation marks omitted).

For these reasons, I grant Plaintiffs' motion for a preliminary injunction.

### C. Akron City Prosecutor

The Akron City Prosecutor also filed a brief in opposition to Plaintiffs' motion. (Doc. No. 45). For reasons that are not apparent to me, counsel for the Akron City Prosecutor failed to mention that Craig Morgan no longer holds that position. Instead, he was appointed as Akron's Chief of Public Safety in January 2026 and is responsible for managing "safety-related functions including the Akron Fire Department, the Akron Police Department, Emergency Management, other roles focused on community violence intervention & prevention, and safety forces personnel recruitment and retention." *See* https://www.akronohio.gov/business_detail_T10_R149.php (last accessed September 3, 2026). Jessica Connell was appointed as Akron's Chief City Prosecutor on July 13, 2026. *See* https://www.akronohio.gov/news_detail_T17_R480.php (last accessed September 3, 2026). Therefore, I hereby order that the Clerk of Court substitute Connell in place of Morgan and will discuss the Akron City Prosecutor briefing as though it was filed in Connell's name. Fed. R. Civ. P. 25(d).

Connell first argues that Plaintiffs cannot establish a likelihood of success on the merits of their claims against her because "not a single allegation in the Complaint mentions [her] by name," and because Plaintiffs "lump [her] into" the group of Defendants referred to in the Complaint as Defendant Prosecuting Attorneys, "despite [her] clearly not qualifying definitionally." (*Id.* at 2 and n.1).

But it is not particularly surprising the Complaint does not mention Connell by name. Pre-enforcement challenges like this seek "a general adjudication of [the] unconstitutionality" of a statute before a plaintiff engages in conduct which might violate that statute. *Golden v. Zwickler*, 394 U.S. 103, 107 (1969) (citation and internal quotation marks omitted). Plaintiffs need not subject themselves to criminal prosecution so that they can challenge the constitutionality of a state statute

and, therefore, the ordinary requirement that a plaintiff must allege what each defendant specifically did is not applicable here. *See, e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("'[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'") (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)) (second alteration added).

Moreover, it is not clear why Connell believes she does not qualify for the group denominated as Defendant Prosecuting Attorneys. Plaintiffs allege "Defendant Prosecuting Attorneys are responsible for prosecuting criminal violations." (Doc. No. 1 at 24). While Connell's responsibilities as a city prosecutor are at the municipal court level, the Sixth Circuit previously has observed that "[c]ity prosecutors are responsible for prosecuting state criminal charges . . . [and, therefore,] a city official pursues her duties as a state agent when enforcing state law or policy." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (citing Ohio Rev. Code §§ 1901.34(C) and 309.08).

Connell's assertion that she "has no intent of engaging in the prosecution of any person for violating Senate Bill 56 during the pendency of this proceeding," (Doc. No. 45 at 1), may, on the surface, seem to suggest that Plaintiffs do not face "a certain threat of prosecution" from Connell if they sell their intoxicating hemp products in Ohio. *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (emphasis removed). But this argument is not as persuasive as it appears to be at first glance.

Four factors described in *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016), may guide a court's analysis of whether a plaintiff has standing to pursue a pre-enforcement challenge against a particular defendant:

> (1) "a history of past enforcement against the plaintiffs or others"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action";

> and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff."

*Welty v. Dunaway*, 749 F. Supp. 3d 882, 901-02 (M.D. Tenn. 2024), *appeal dismissed,* 145 F.4th 628 (6th Cir. 2025) (quoting *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 439 (6th Cir. 2024) (further quoting *Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021))). "The Sixth Circuit has been clear that the *McKay* factors 'are not exhaustive, nor must each be established.'" *Welty*, 749 F. Supp. 3d at 901 (quoting *Online Merchants*, 995 F.3d at 550).

Factors one and two often have little relevance in a pre-enforcement challenge to the constitutionality of a state law that raises the specter of criminal sanctions. *See Welty*, 749 F. Supp. 3d at 902 (observing "a lack of history of enforcement may be a less important factor when the [recently enacted] law being challenged is criminal in nature," and that it would be uncommon for a prosecuting attorney to send warning letters to potential defendants before prosecuting them) (citing *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1026 (6th Cir. 2024)).

The third factor weighs in favor of standing, as the requirement that a company obtain a license before selling intoxicating hemp products makes enforcement of the law easier, because the State of Ohio maintains an exclusive list of all companies permitted to sell those products in Ohio. Therefore, any company not on the list, and thus prohibited from selling intoxicating hemp products, is easily identifiable.

The fourth factor favors Plaintiffs as well. While Connell's brief represents she does not intend to pursue the prosecution of any company violating Ohio law through the sale of intoxicating hemp products, "[t]he Sixth Circuit, when presented with a similar situation a number of years ago, declined to treat the representations of counsel as an inherently reliable indication of government officials' position, because, among other things, 'it is not clear that counsel can bind' its government client without that client's consent." *Welty*, 749 F. Supp. 3d at 904 (quoting *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1106 (6th Cir. 1995)).

Moreover, it is here that the presumption that any arguments advanced in the Akron City Prosecutor's brief are made on behalf of the office holder breaks down. Counsel for the Akron City Prosecutor represented that Morgan had no intention of prosecuting companies selling intoxicating hemp products without a license. Not only does the record not contain an affidavit from Morgan attesting to his purported lack of intent, but it also contains no indication whatsoever of Connell's views on the matter. I reject this argument as well and conclude Connell has not shown Plaintiffs have no likelihood of success on the merits of their claims against her.

## III. CONCLUSION

For the reasons stated above, I grant the Plaintiffs' motion for a preliminary injunction, (Doc. No. 34), and enjoin Defendants from taking any criminal, civil, administrative, or regulatory enforcement action against the named Plaintiffs, or any person or organization possessing, selling, distributing, or consuming Plaintiffs' products, that involves, is dependent upon, or relates to the statutory definition of "hemp" as amended by Senate Bill 56, so long as the substance or product at issue is legally defined as "hemp" or a hemp-derived product under federal law.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge